# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIAM J. FULLER, JR. | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY F. GEITHNER, | : | 09-2216 |
| Secretary, Department of the Treasury | : | |
| Defendant. | : | |

# M E M O R A N D U M

Hon. Gene E.K. Pratter　　　　　　　　　　　　　　　　　　　　　　　　　May 13, 2011
U.S. District Court Judge

**Introduction**

William Fuller invokes the Rehabilitation Act to contend that he was terminated from his position as a metal forming machine operator at the United States Mint, which he maintains was an adverse employment action motivated by discrimination on the basis of his sleep apnea disability. At the close of discovery, the Mint moved for summary judgment. The Mint argued that Mr. Fuller is not disabled under the Rehabilitation Act, that Mr. Fuller is not otherwise qualified for his position, and that even were he disabled, Mr. Fuller has not mustered sufficient evidence to overcome the Mint's legitimate business reason for his termination, notably Mr. Fuller's absenteeism. Mr. Fuller argued that a genuine issue of material fact existed both as to whether his sleep apnea interfered with the major life activity of sleeping such that he is disabled under the Rehabilitation Act, and as to whether the Mint's proffered reason for his termination is mere pretext for discrimination.

The Court denied the Mint's Motion for Summary Judgment, noting that an indulgent review of the record evidence adduced by Mr. Fuller precluded a grant of summary judgment.

The Mint timely filed a Motion for Reconsideration, now considered, but denied, by the Court.

**Legal Standard**

To succeed on a motion for reconsideration, the moving party must demonstrate (1) an intervening change in the controlling law; (2) evidence which was not available when the court issued its order; or (3) the need to correct a manifest injustice stemming from a clear error of law or fact. Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); see also Drake v. Steamfitters Local Union No. 420, 1998 WL 564486, at *3 (E.D. Pa. Sept. 3, 1998). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995); see also In re Loewen Group, 2006 WL 27286, at *1 (E.D. Pa. Jan. 5, 2006) (quoting Pennsylvania Ins. Guar. Ass'n v. Trabosh, 812 F. Supp. 522, 524 (E.D. Pa. 1992)).

A motion for reconsideration should not raise additional arguments that the movant "could have made but neglected to make prior to judgment." Holsworth v. Berg, No. 05-1116, 2005 WL 1799409, at *3 (E.D. Pa. Jul. 26, 2005). Furthermore, reconsideration is not permitted simply to allow a "second bite at the apple." See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995). In other words, motions for reconsideration may not be used to reargue matters that have already been raised by the parties and that the Court has already considered and decided. Calhoun v. Mann, No. 08-0458, 2009 WL 159276, at *1 (E.D. Pa. Jan. 22, 2009); see also Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (stating "[i]t is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through-rightly or wrongly.").

**Discussion**

In its Motion, the Mint argues that the Court made clear errors of law and fact "regarding whether Plaintiff William Fuller could perform the essential functions of his job[.]" First, the Mint argues that the Court erroneously concluded that the flexible schedule requested by Mr. Fuller was a reasonable accommodation, because Mr. Fuller's own circumstances – specifically, his childcare responsibilities – precluded him from working a flexible schedule and because a flexible schedule is unworkable at a manufacturing facility like the Mint and is unduly costly. Second, the Mint argues that the Court was overly-restrictive in its interpretation of Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999), regarding the use of corrective measures in the consideration of whether an individual is substantially limited in a major life activity, and in its weighing of the factors identified in the Equal Employment Opportunity Commission's definition of a substantial limitation, 29 C.F.R. § 1630.2(j)(2)(i)-(iii), when assessing whether Mr. Fuller was disabled. Third, the Mint again directs the Court to the reasoning and conclusions of Keyes v. Catholic Charities of the Archdiocese of Philadelphia, No. 09-1887, 2010 WL 290513, at *6 (E.D. Pa. Jan. 20, 2010), *aff'd* 2011 WL 713640 (3d Cir. Mar. 2, 2011).

Mr. Fuller, in opposition, argues that the Mint is merely trying to rehash previously-made arguments and does not establish any clear legal or factual error. Mr. Fuller then argues that he presented evidence which fully supports the existence of triable facts as to reasonable accommodation, and that he presented sufficient evidence that his sleep apnea was so severe as to be appropriately considered a disability.

Regarding whether Mr. Fuller was impaired in the major life activity of sleeping due to his sleep apnea or whether corrective measures mitigated his symptoms such that he could not be

considered disabled, the Mint, as it did in its Motion for Summary Judgment, urges the Court to adopt the reasoning of Keyes. While the Court notes that in the time since issuing its decision regarding whether it would adopt the reasoning of Keyes that the Third Circuit Court of Appeals affirmed that case, 2011 WL 713640 (3d Cir. Mar. 2, 2011), the Court continues to discern a meaningful distinction between the record evidence regarding the severity of Mr. Fuller's sleep apnea and that of Mr. Keyes. In affirming the District Court in Keyes, the Third Circuit Court of Appeals took particular note of the fact that Mr. Keyes, while contending that his sleep apnea was the basis of his termination, did not seek medical care until six months after he was terminated. Keyes, 2011 WL 713640, at * 3. The appellate court also noted that there was little evidence that plaintiff's sleep was severely disrupted, and distinguished the situation of Mr. Keyes with that of the plaintiff in Peter v. Lincoln Tech. Inst., Inc., 255 F. Supp. 2d 417 (E.D. Pa. 2002), who had testified that she fell asleep during the day and that her disorder was non-responsive to a CPAP machine. Id. Although it cannot be said that the record evidence regarding Mr. Fuller's sleep apnea rises to the level of that of the Peter plaintiff, the Court already concluded that the record here, albeit under a generous reading, contains sufficient probative evidence that a jury could find in Mr. Fuller's favor on this issue. There is evidence that, as discussed in the Court's opinion, Mr. Fuller's sleep apnea was severe enough that he stopped breathing while sleeping, that his face turned blue, and that he could only be awakened by drastic action on the part of his family. Mr. Fuller was also under the arguably poor care of doctors for the majority of the period during which he had work attendance problems, unlike the plaintiff in Keyes who waited for months after termination to seek help. The Mint is not entitled to relief on this score.

The Mint also asks that the Court reconsider its decision because, it contends, record evidence supports a finding that the reasonable accommodation allegedly requested by Mr. Fuller, to wit, a flexible schedule, is in fact unreasonable. In particular, the Mint notes that record evidence supports a finding that a flexible schedule in a manufacturing facility would be over-burdensome. In denying summary judgment, the Court noted that Mr. Fuller presented minimally sufficient evidence to raise a triable issue of fact as to whether he was otherwise qualified for his job, i.e., that his request of a flexible schedule was a reasonable accommodation. In referring to the cost of such a schedule, the Mint functionally argues that a flexible schedule is categorically not reasonable in a shift-based manufacturing facility.

The Mint re-directs the Court's attention to the declarations of Messrs. Robidoux and Krecko, as well as to the memoranda issued to Mr. Fuller during his escalating discipline. In his declaration, Mr. Krecko stated that he would often have to shut down the line when Mr. Fuller called in sick. Krecko Decl. ¶ 15. This in turn resulted in lower productivity, which, per Mr. Krecko, *could* lead to missing shipments of coins, *possibly* leading to the need for overtime, and thereby increasing the cost of production. Id. ¶ 16. Mr. Robidoux similarly noted that Mr. Fuller's absences "often meant" that the Mint could not use certain machines, and "often meant" that other parts of the plant would not work at full capacity. Robidoux Decl. ¶ 17. Further, Mr. Robidoux stated, "[m]aking up those production goals and shipments was costly because it would often require overtime by Mint employees." Id. ¶ 18.

As noted in the Court's opinion, while the Court does not disagree with the sensible proposition that an employee in a manufacturing facility must attend work, i.e., cannot telecommute, Mr. Fuller testified that his absence did not affect the workings of the Mint because

5

there were relief operators to cover shifts. The Court did not locate, nor does the Mint identify, any point at which Mr. Fuller was challenged under oath about his understanding in this regard. Thus, on the one hand, the record includes statements of Mint employees indicating that productivity could be harmed and Mint discipline letters informing Mr. Fuller that his absence "hinders the Coining Division's ability to effectively plan and organize work", May 22, 2006 Notice of Decision on Proposed Removal, and that his "unscheduled and unexcused absences place an undue burden on [his] coworkers because they have to perform the work [he] normally would be assigned", March 17, 2006 Notice of Proposed Removal. On the other hand, the record contains Mr. Fuller's testimony about his understanding of the effect of his absences, i.e., that they did not affect production. It is not the Court's role to determine who of these individuals is more credible. As the Court noted in its opinion, even in the face of arguably weak evidence presented by Mr. Fuller, the Court is constrained not to trespass on the jury's role of assessing witness credibility.

**Conclusion**

For the reasons discussed above, the Court must deny the Mint's Motion. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE